IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIANTE DION SCOTT,<br><br>    Petitioner,<br><br>    vs.<br><br>L. E. SCRIBNER, Warden, Calipatria State Prison,<br><br>    Respondent. | No. 2:10-cv-01220-JKS<br><br>MEMORANDUM DECISION |

Tiante Dion Scott, a state prisoner appearing *pro se*, filed a Petition for Habeas Corpus under 28 U.S.C. § 2254.  Scott is currently in the custody of the California Department of Corrections, incarcerated at the Calipatria State Prison.  Respondent has answered, and Scott has replied.  Scott has also requested an evidentiary hearing.

## I.  BACKGROUND/PRIOR PROCEEDINGS

Following a jury trial in the Sacramento County Superior Court, Scott was convicted in December 2006 of four counts of Robbery in the First Degree in concert, Cal. Penal Code §§ 211, 213(a)(1)(A), sustained allegations of personal use of a firearm, Cal. Penal Code § 12022.53(b), and was also convicted of one count of being a Felon in Possession of a Firearm, Cal. Penal Code § 12021(a)(1).  Scott also admitted a prior prison term, Cal. Penal Code § 667.5(b).  The trial court sentenced Scott to an aggregate prison term of thirty-six years.  The California Court of Appeal, Third Appellate District, affirmed Scott's conviction and sentence in an unpublished decision,[1] and the California Supreme Court summarily denied review without

---

[1] *People v. Heng* [*Scott*], No. C054315, 2008 WL 2721718 (Cal. Ct. App. Jul. 14, 2008).

opinion or citation to authority on September 24, 2008.  On April 10, 2009, Scott filed a petition

for habeas relief in the Sacramento County Superior Court ("Superior Court"), which was denied

in an unreported, reasoned decision.[2]  The California Court of Appeal summarily denied Scott's

subsequent petition for habeas relief without opinion or citation to authority, and the California

Supreme Court summarily denied Scott's petition for habeas relief on January 21, 2010.  Scott

timely filed his Petition for relief in this Court on May 10, 2010.

The facts underlying Scott's conviction as summarized by the California Court of Appeal:

On April 24, 2006, Canh Van Le, age 78; his 72-year-old wife Nhan Dang;
their 32-year-old son Huyen Le; and their 20-year-old granddaughter (Huyen's niece)
Truc Anh Le lived together in a South Sacramento residence.  The doorbell rang after
1:00 p.m. and Nhan answered to find a young Black man asking her questions.  She
did not speak English, so Nhan asked her granddaughter Truc for help.

Truc, who understood only a little English, went upstairs to get her English-
speaking Uncle Huyen, but noticed she was being followed by a man with a gun.
Two Black men and one Hispanic man had pushed the door open and entered the
house.  The victims described one of the Black robbers as short and thin while the
other as big and tall.  In a field identification, Truc and Huyen identified Scott as the
large Black robber and Heng as the Hispanic robber.  Morris is five feet five inches
tall and weighed 132 pounds while Scott is five feet 10 inches tall and weighed 235
pounds.  While neither Truc nor Huyen could identify Morris in a field identification,
at trial all four of the victims identified the defendants as the robbers.

Truc knocked on the door of Huyen's upstairs bedroom and told him robbers
were in the house.  Huyen opened the door to let her enter and call 911.  He closed
the door, but Morris and Scott broke the door down and entered the room.  Scott and
Morris, both armed, told Truc to put the phone down.  Scott eventually left the room
to check the rest of the upstairs.

Morris remained in the room and pointed a gun at Huyen's head. Canh
entered and threw himself on Huyen to keep his son from being shot.  Huyen, Canh,
and Truc were taken downstairs to join Nhan.

All four victims were tied up and made to lie face down next to each other.
Heng took a pistol from Morris and questioned Huyen about whether there was any
money in the house.  When Huyen replied they had no money Heng said, "You Asian
punk, you know we hear—somebody told us you have the money.  That's why—what

[2] Docket No. 8 at 156-61.

we come here for.  And if you don't tell me the money, I'm gonna kill your dad, your mom and I gonna rape your niece.  Is that what you want?"  (*Sic.*)

Huyen pleaded with Heng.  Heng asked Huyen who owned the car parked in front of the house.  Huyen lied, telling Heng it was his brother's car, and that he had no wallet, having left it in his car.  Heng hit Huyen in the head three times with the gun, asking him where the money was between strikes.  Heng then did the same to Huyen's elderly parents, repeatedly striking them in the head with his gun, each time asking Huyen to look at the firearm before he struck them.

Heng told Huyen he was going to rape Truc "right now" and took off his shirt.  He chambered a bullet from the magazine by pulling the slide back, put the gun to Truc's head, telling her, "Do you feel it?" and then slowly moved the weapon down her back and to her buttocks.

Fortunately, the robbers had left their stolen SUV running in front of the house.  Sacramento police officers were dispatched to the home to investigate the suspicious vehicle.  Before Heng could do anything more to Truc, one of the other robbers exclaimed from upstairs, "Hey, there are cops outside.  There are police outside," which caused all of the robbers to run out of the house.

Heng was apprehended by the police officers as he tried to leave through the back door.  Morris and Scott fled by jumping to the roof of the house next door before going back to the ground, where they were chased by the police on foot and separately caught.

The robbers took credit cards and $1,500 in cash belonging to Canh and Nhan.  Canh kept these in a suitcase reserved for special documents hidden in his bedroom closet.  The money was for the rent on the family's house.

Officers found a nine-millimeter Beretta semiautomatic handgun and a BB gun at the residence.  Cash in the amount of $950 was found on Scott.  The stolen credit cards were found on Morris.  The money was folded in $100 increments, just as Canh does.[3]

## II.  GROUNDS RAISED/DEFENSES

In his Petition, Scott raises eleven enumerated grounds: (1) a violation of his right against self-incrimination under the Fifth Amendment; (2) a denial of transcripts in violation of his right to present a defense; (3) insufficiency of the evidence to support the personal use of a firearm allegation, Cal. Penal Code § 12022.53(b); (4) prosecutorial misconduct and overreaching; (5) insufficiency of the evidence to convict Scott on two of the robbery counts; (6) application of

---

[3] *Heng*, 2008 WL 2721718 at *1-2.

Penal Code §§ 654 and 664 violated the Due Process and Equal Protection Clauses; (7) ineffective assistance of trial counsel; (8) the pretrial and trial judges collectively abridged Scott's rights under the Fifth, Sixth, and Fourteenth Amendments; (9) the imposition of restitution was established without a hearing; (10) ineffective assistance of appellate counsel; and (11) the failure to sever his trial from that of his co-defendants denied Scott his rights under the Fifth and Fourteenth Amendments.  Respondent contends that Scott's first, third, fourth, sixth, seventh, eighth, ninth, tenth, and eleventh grounds are all procedurally barred.  Respondent does not assert any other affirmative defense.[4]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[6]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

---

[4] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

[5] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[6] *Williams*, 529 U.S. at 412 (alteration added).

power of the Supreme Court over federal courts.[7]  Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[8]  When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

be "objectively unreasonable," not just "incorrect or erroneous."[9]  The Supreme Court has made

clear that the objectively unreasonable standard is "a substantially higher threshold" than simply

believing that the state-court determination was incorrect.[10]  "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'"[11]  In a

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state court criminal trial is whether the error had a substantial

and injurious effect or influence in determining the outcome.[12]  Because state court judgments of

---

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[9] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[11] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[12] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

conviction and sentence carry a presumption of finality and legality, the petitioner has the burden

of showing by a preponderance of the evidence that he or she merits habeas relief.[13]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal
> court relitigation of claims already rejected in state proceedings.  *Cf. Felker v.
> Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing
> AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue
> the writ in cases where there is no possibility fairminded jurists could disagree that
> the state court's decision conflicts with this Court's precedents.  It goes no farther.*
> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme
> malfunctions in the state criminal justice systems," not a substitute for ordinary error
> correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct.
> 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition
> for obtaining habeas corpus from a federal court, a state prisoner must show that the
> state court's ruling on the claim being presented in federal court was so lacking in
> justification that there was an error well understood and comprehended in existing
> law beyond any possibility for fairminded disagreement.[14]

In applying this standard, this Court reviews the "last reasoned decision" by the state

court.[15]  State appellate court decisions that summarily affirm a lower court's opinion without

explanation are presumed to have adopted the reasoning of the lower court.[16]  This Court gives

---

[13] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[14] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[15] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

[16] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an

(continued...)

the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[17]

Under California's unique habeas procedure, a prisoner who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal.  If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[18] This is considered as the functional equivalent of the appeal process.[19]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[20]  This presumption applies to state-trial courts and appellate courts alike.[21]

---

[16](...continued)
unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[17] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[18] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

[19] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

[20] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[21] *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("Stevenson does not address these factual findings, let alone challenge them with clear and convincing evidence. Accordingly, we presume them to be correct." (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002))).

IV.  DISCUSSION

Initially this Court notes that on direct appeal Scott raised only his insufficiency of the evidence claim to support two of the robbery counts claim (ground five).  All other claims, to the extent they were raised in the state courts, were raised in Scott's habeas petitions filed with the Superior Court, the California Court of Appeal, and the California Supreme Court.  In addressing the Petition, this Court will address in order: (1) the request for an evidentiary hearing; (2) the procedural bar defense; and (3) the remaining claims on the merits.

The Petition in this case encompasses 155 pages.  This Court notes, as did Respondent, that under each ground Scott includes a myriad of claims containing a mixture of conclusory and factual statements, which renders the Petition disorganized, confusing, and difficult to follow.  It appears that, for the most part, although he presents them in a different order, Scott presents his claims on the same legal and factual bases as he did in the state courts.  In some instances, however, Scott does clearly present his claim in this Court on a different legal and/or factual footing than he presented the claim in the state courts.  This Court may consider only those claims that have been fairly presented to the state courts.[22]

In order to exhaust a claim, a petitioner must "fairly present" to the state supreme court both the legal and factual basis for the claim.[23]  "[T]he petitioner must . . . provide the state court with the operative facts, that is, 'all of the facts necessary to give application to the constitutional principle upon which [the petitioner] relies.'"[24]  A petitioner may not fundamentally alter the

---

[22] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[23] *Baldwin*, 541 U.S. at 29; *Robinson v. Schriro,* 595 F.3d 1086, 1101 (9th Cir. 2010).

[24] *Davis v. Silva,* 511 F.3d 1005, 1009 (9th Cir. 2008) (emphasis added) (quoting
(continued...)

8

legal claim already considered by the state courts.[25]  In the Ninth Circuit, a petitioner must make

the federal basis of the claim explicit either by referencing specific provisions of the federal

Constitution or statutes, or citing to federal case law.[26]  Mere similarity of claims between a state

law claim and a federal law claim is insufficient for exhaustion purposes.[27]  In order to present

the substance of a claim to a state court, the petitioner must reference a specific federal

constitutional provision as well as a statement of facts that entitle the petitioner to relief.[28]  A

mere appeal to a broad constitutional guarantee, e.g., due process, is insufficient to present the

substance of a constitutional claim to the state courts.[29]  A petitioner who cites one clause of a

constitutional amendment does not exhaust a claim under a different clause of the same

constitutional amendment.[30]  In appropriate circumstances this Court may raise the failure to

properly exhaust claims *sua sponte*, provided nothing in the record suggests that the state either

strategically withheld the defense or chose to relinquish it.[31]  This case presents a situation where

it is appropriate to raise the failure to exhaust available state-court remedies *sua sponte*.

_____

[24](...continued)
*Daugharty v. Gladden,* 257 F.2d 750, 758 (9th Cir. 1958)); *see Anderson v. Harless*, 459 U.S. 4, 6 (1982) (same).

[25] *Beaty v. Stewart,* 303 F.3d 975, 989-90 (9th Cir. 2002) (citing *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986)).

[26] *Lyons v. Crawford,* 232 F.3d 666, 670 (9th Cir. 2000), *amended and superseded by Lyons v. Crawford,* 247 F.3d 904 (9th Cir. 2001).

[27] *Johnson v. Zenon,* 88 F.3d 828, 830 (9th Cir. 1996).

[28] *Gray v. Netherland,* 518 U.S. 152, 162-163 (1996).

[29] *See id.* at 163; *Harless*, 459 U.S. at 7.

[30] *Picard v. Connor,* 404 U.S. 270, 276-277 (1971).

[31] *See Day v. McDonough*, 547 U.S. 198, 206-11 (2006); *but see Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2003) (a failure to raise an affirmative defense constitutes a waiver).

Therefore, this Court will consider claims only to the extent that those claims were first presented to the state courts on the same or substantially the same constitutional theories and facts.  This Court will not compare the 155 pages of the Petition in this Court with the 144 pages of the habeas petition filed in the California Supreme Court to determine if there are some additional facts or theories presented in this Court that would warrant granting relief.  This Court will decide the case on the facts and legal theories presented to the state courts.

A.      **Evidentiary Hearing**

Scott has requested an evidentiary hearing.  Ordinarily, a federal habeas proceeding is decided on the complete state-court record and a federal evidentiary hearing is required only if the trier of fact in the state proceeding has not developed the relevant facts after a full hearing.[32] It does not appear that Scott was afforded an evidentiary hearing in any state court, and no decision of a California Court addresses the request.  Scott did include in the captions of his habeas petitions in the state courts the statement "Evidentiary Hearing Requested."  Nowhere in his petitions to the state courts, however, does Scott identify what evidence might be adduced in an evidentiary hearing, what those facts might prove, or even what factual issues are in dispute.  His request for an evidentiary hearing before this Court suffers from the same problem.  Under both California and Federal procedural rules an evidentiary hearing is not required in a habeas

---

[32] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. § 2254(e)(2) (1996).

proceeding in the absence of any disputed objective facts.[33]  Scott's request for an evidentiary hearing is DENIED.

**B.     Procedural Bar**

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."[34]  This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims . . . ."[35]  Procedural default does not preclude federal habeas review unless the last state court rendering judgment in a case clearly and expressly states that its judgment rests on a state procedural bar.[36]  "[I]n order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default."[37]  A discretionary state procedural rule can be firmly established and regularly followed, so as to bar federal habeas review, even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others.[38]

---

[33] *Williams v. Calderon*, 52 F.3d 1465, 1484 (9th Cir. 1995) (citing *Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992)); *In re Cordero*, 756 P.2d 1370, 1375 n.1 (Cal. 1988).

[34] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[35] *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).

[36] *Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (citing *Harris v. Reed*, 489 U.S. 255, 262-63 (1989)).

[37] *Morales v. Calderon,* 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotation marks and citation omitted).

[38] *Walker v. Martin*, 131 S. Ct. 1120, 1128 (2011); *Beard v. Kindler*, 130 S. Ct. 612, 618
(continued...)

To the extent that Scott's claims were defaulted in state court on an adequate and independent state ground, they will not be considered in federal habeas proceedings unless Scott can demonstrate cause for the default and actual prejudice.[39]  To prove a fundamental miscarriage of justice, Scott must show that a constitutional violation probably resulted in his conviction despite his actual innocence.[40]  Although at the gateway stage the petitioner need not establish his innocence as an "absolute certainty," Scott must demonstrate that more likely than not, no reasonable juror could find him guilty beyond a reasonable doubt.[41]

> If a petitioner has procedurally defaulted on a claim, a federal court may nonetheless consider the claim if he shows: (1) good cause for his failure to exhaust the claim; and (2) prejudice from the purported constitutional violation; or (3) demonstrates that not hearing the claim would result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546; *Sawyer v. Whitley,* 505 U.S. 333, 339–40, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).  An objective factor outside of a petitioner's control (e.g., ineffective assistance of counsel or a basis for the claim that was previously unavailable) could constitute cause. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *McCleskey v. Zant,* 499 U.S. 467, 497, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).  The petitioner can meet the prejudice prong if he demonstrates "that the errors . . . worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis,* 874 F.2d 599, 603 (9th Cir.1989) (citing *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)).  A petitioner can demonstrate a fundamental miscarriage of justice by "establish[ing] that under

---

[38](...continued)
(2009).

[39] *See Coleman,* 501 U.S. at 729.

[40] *See Schlup v. Delo,* 513 U.S. 298, 321-25 (1995) (linking miscarriages of justice to actual innocence); *United States v. Olano,* 507 U.S. 725, 736 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); *Murray v. Carrier,* 477 U.S. 478, 496 (1986) ("In an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

[41] *House v. Bell*, 547 U.S. 518, 538 (2006).

the probative evidence he has a colorable claim of factual innocence." *Sawyer,* 505 U.S. at 339, 112 S.Ct. 2514 (quotation marks omitted).[42]

Respondent raises the procedural bar defense to those claims that were presented in Scott's state habeas petitions.  Respondent provides a comprehensive review of the California law with respect to habeas proceedings.  Unfortunately, most of the law discussed by Respondent is inapplicable to this case for the simple reason that the Sacramento County Superior Court, the last reasoned state-court decision, did not expressly rely on those grounds.  Accordingly, this Court will address procedural bar solely with respect to those grounds expressly relied upon by the Superior Court.

It is firmly established under California law that "habeas corpus will not lie as a substitute for appeal . . . nor as a second appeal."[43]  Contentions that could have been raised during direct appeal, but were not, generally cannot be renewed in a petition for habeas corpus.[44]  As discussed further below, the Superior Court expressly relied upon this ground in rejecting the claim Scott makes in his third ground.

As to the other claims presented in the state habeas petition, the Superior Court simply stated that those claims were barred by "Robbins/Clark" without further citation,[45] explanation, or analysis.  The reference to *Robbins* and *Clark* is generally considered as noting that the

---

[42] *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011) (alterations in original).

[43] *In re Harris*, 855 P.2d 391, 396 (Cal. 1993) (citing *In re Foss*, 519 P.2d 1073 (Cal. 1974); *In re Terry*, 484 P.2d 1375 (Cal. 1971); *In re Waltreus*, 397 P.2d 1001 (Cal. 1965); *In re Spears*, 204 Cal. Rptr. 333 (Ct. App. 1984); *In re Wagner*, 173 Cal. Rptr. 766 (Ct. App. 1981)).

[44] *Ex parte Dixon*, 264 P.2d 513, 514 (Cal. 1953).

[45] This Court assumes that the Sacramento County Superior Court was referring to *In re Robbins*, 959 P.2d 311 (Cal. 1998) and *In re Clark*, 855 P.2d 729 (Cal. 1993).

13

petition is untimely,[46] and is an adequate and independent state procedural ground.[47]  That, however, does not necessarily control here.  "A procedural default based upon an ambiguous order that does not clearly rest on independent and adequate state grounds is not sufficient to preclude federal collateral review."[48]  Nowhere in the decision does the Superior Court discuss the timeliness of Scott's habeas petition.  Here the state habeas petition was filed less than two and a half years after the trial and less than six months after the California Supreme Court denied review on direct appeal.  The response contains a glaring omission, i.e., that the delay in bringing his state habeas petition was somehow unreasonable under California law.  Indeed, taken in context, it appears that the Superior Court mis-spoke, intending to cite *Harris/Dixon* (failure to raise a claim on appeal) instead of untimeliness under *Robbins/Clark*.  Given the ambiguity in the decision of the Superior Court, this Court declines to find that to the extent the Superior Court cited "Robbins/Clark" as a basis for denying relief, that it constitutes a procedural bar to review by this Court in a federal habeas proceeding.  Therefore, Respondent's procedural bar defense is rejected as to the first, second, fourth, sixth, seventh, eighth, ninth, tenth, and eleventh grounds.

Ground 3:  Insufficiency of the Evidence (Personal Use of a Firearm)

Scott argues that the use of a firearm allegation was not proven beyond a reasonable doubt.  The Superior Court rejected Scott's arguments, holding:

---

[46] *See, e.g., Walker v. Martin*, 131 S. Ct. 1120, 1127-30 (2011); *Catlin v. Superior Court*, 245 P.3d 860, 864-65 (Cal. 2011); *In re Espinoza*, 120 Cal. Rptr. 3d 849, 852-53 (Ct. App. 2011).

[47] *Martin*, 131 S. Ct. at 1128, *abrogating Townsend v. Knowles*, 562 F.3d 1200 (9th Cir. 2009).

[48] *Valerio v. Crawford*, 306 F.3d 742, 774 (9th Cir. 2002) (en banc) (quoting *Morales v. Calderon*, 85 F.3d 1387, 1392 (9th Cir. 1996)) (internal quotation marks omitted).

[Scott] first claims that the Penal Code § 12022.53(b) firearm allegations were not proven true beyond a reasonable doubt because the prosecutor in closing argument confused the jury by arguing that [Scott] possessed a handgun the minute he walked through the door regardless of whether he actually used a firearm later, which he very well may have done, and in other argument made in closing by the prosecutor.

The claim could have been but was not raised on appeal, thus is procedurally barred on state habeas corpus (In re Dixon (1953) 41 Cal.2d 756, reaffirmed in In re Harris (1993) 5 Cal. 4th 813, 829).  The only exceptions to this procedural bar are: (1) if the claim is based on constitutional error that is both clear and fundamental, and that strikes at the heart of the trial process; (2) if the claim is now couched in ineffective assistance of counsel terms; (3) if the court lacked fundamental jurisdiction over the petitioner or the subject matter; (4) if the court acted in excess of its jurisdiction and the issue is strictly a legal one not requiring a redetermination of the facts underlying the claim; (5) there has been a change in the law affecting the petitioner (Harris, supra, 5 Cal. 4th 813, 834, 834 fn. 8, 836, 840-841, 841; In re Antazo (1970) 3 Ca1.3d 100, 108 [exceptions to Dixon rule are same as those to Waltreus rule]); or (6) if the claim is that the sentence is unauthorized, as an unauthorized sentence may be corrected at any time (People v. Welch (1993) 5 Cal. 4th 228; Harris, supra, 5 Cal. 4th 813, 842; People v. Serrato (1973) 9 Cal.3d 753, 763, overruled on other grounds in People v. Fosselman (1983) 33 Cal.3d 572, 583 fn. 1).

First, the trial court had instructed the jurors that nothing the attorneys say is evidence, that only the witnesses' answers are evidence, and that the jurors should not assume that something is true just because one of the attorneys asks a question that suggests it is true.  It is presumed that the jurors followed this instruction (see People v. Jablonski (2006) 37 Cal.4th 774, 834).

Regardless, the evidence was sufficient to support the verdict, as the victims testified seeing the large black robber, whom they identified in a field identification as [Scott], holding and using a gun throughout the course of conduct.  One witness testified that the big black guy, who was [Scott], held a gun against the witness's back when the witness was going down the stairs.  Penal Code § 12022.53(b) does not require gun use throughout the entire course of conduct but only at any point in time throughout the course of conduct, thus this testimony alone was sufficient to support the true findings of Penal Code § 12022.53(b) personal gun use by [Scott].[49]

Although the ultimate burden of proving adequacy of a state-procedural bar is on the

government, once it has "adequately pled the existence of an independent and adequate state

procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the

---

[49] Docket No. 8 at 156-57.

petitioner."[50]   The petitioner may satisfy his burden "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule."[51]   Scott has not made any attempt to meet this burden.

Even if this Court were to reach the merits, Scott would not prevail for the same reasons that Scott does not prevail on his fifth ground, discussed below.  It follows, *a fortiori*, that Scott could not establish his "actual innocence."  Scott is procedurally barred from raising his third ground, and is not entitled to relief under that ground in any event.

## C.      Merits

Ground 1:  Violation of Right Against Self-Incrimination

In this case, Scott was charged with being a felon in possession of a firearm.  An essential element of that crime is that Scott must have a prior felony conviction.  During his summation the prosecutor referred to Scott's prior conviction.  With respect to Count Nine, the felon in possession of a firearm, the prosecutor referred to California Department of Corrections abstracts that had been introduced into evidence to establish the fact that Scott was a felon and later referred to his status as such in arguing that the evidence established Scott's guilt on that count.[52] Scott contends that this violated his rights under the Fifth, Sixth, and Fourteenth Amendments. Scott raised this issue at two points in his state habeas petitions, as part of his prosecutorial misconduct claim and also his claim that the trial judges collectively abridged his Fifth, Sixth,

---

[50] *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003); *see Jackson v. Roe*, 425 F.3d 654, 656 n.2 (9th Cir. 2005) (noting the burden-shifting test and directing the district court to apply it on remand in that case).

[51] *Bennett*, 322 F.3d at 576.

[52] Docket No. 8-1 at 161-62, 171, 177-78.

and Fourteenth Amendment rights.  The Superior Court rejected his prosecutorial misconduct

claim, stating:  "The prosecutor was entitled to argue about the prior conviction, which was an

element of the charged Penal Code § 12021(a) offense."[53]  The sole federal constitutional

argument raised is that this somehow violated his Fifth Amendment right not to incriminate

himself.  Scott argues in part that because he did not contest his prior conviction and the trial

court ordered it not to be revealed to the jury, it should not have been revealed to the jury until

after he had been convicted on the robbery charges.  Yet, the record belies the claim that Scott

did not contest his status as a felon or that the trial court ordered it not to be revealed to the jury.

The excerpt of the record cited by Scott provides:

> THE COURT:  Okay. And then the issue outstanding  was Count 9 regarding Mr. Scott's 12021:
> During jury selection, I asked for a sidebar conference regarding whether I should inform the jury that Mr. Scott had been previously convicted of a felony.  The response from Mr. Leighton was that Mr. Scott was not gonna stipulate to his prior convictions, that I could inform the jury of that information.
> So, Mr. Leighton, in terms of Count 9, what is your position regarding the jury being informed of that count in its entirety?
> That is the 12021, plus the allegation of two prior convictions, as indicated in the Information.
> MR. LEIGHTON:  We would move to bifurcate that, Your Honor.
> THE COURT:  The two prior convictions?
> MR. LEIGHTON:  Yes, Your Honor.
> THE COURT:  Okay. Well, there's two issues there:
> In the 12021, I don't believe bifurcation is possible, because that is an element that the prosecution has to prove.
> MR. LEIGHTON:  Okay.
> THE COURT:  So as to Count 9, that should be read in its entirety.[54]

---

[53] Docket No. 8 at 158.

[54] Docket 8-1 at 21-22.

The admission of evidence of a prior conviction is an evidentiary question.  The fact that Scott was a convicted felon was relevant to the felon-in-possession charge and its probative value with relation thereto clearly outweighed its prejudicial effect.  Had Scott wished to keep that fact away from the jury he could have stipulated to the prior conviction.[55]  Instead, Scott chose to contest the point and cannot now be heard to complain of the potential adverse effect contesting the element might have had.

Although it is not entirely clear, Scott appears to argue in part that his prior conviction was used to establish that he was guilty of robbery, i.e., that he had a propensity to commit crimes.  The fatal flaw in Scott's argument, however, is that no court, including the Supreme Court, has ever held that the introduction of propensity evidence is *per se* prohibited by the Constitution.  It is purely and simply a rule of evidence, not a rule of constitutional law.  Thus, because the Supreme Court has not ruled on the question of whether propensity evidence violates the Due Process Clause,[56] admission of this evidence was not contrary to, nor an unreasonable

---

[55] *See Old Chief v. United States*, 519 U.S. 172 (1997), in which the Supreme Court, discussing the balancing between Federal Rules of Evidence 403 and 404, held that a district court abuses its discretion when it spurns a defendant's offer to admit to evidence of a prior conviction as an element of an offense and instead admits the full record of the prior judgment of conviction when the name or nature of the prior offense raises the risk of a verdict.  Even if this case were implicated, it would not support granting relief because in *Old Chief* the Supreme Court was interpreting the Federal Rules of Evidence and thus was acting in its supervisory capacity over the lower federal courts.  *Smith v. Philips*, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." (citations omitted)); *see also Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) ("It is beyond dispute that we do not hold a supervisory power over the courts of the several states." (quoting *Dickerson v. United States*, 530 U.S. 428, 438 (2000))).

[56] *See Estelle v. McGuire,* 502 U.S. 62, 75 n.5 (1991) ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes'
(continued...)

application of, clearly established federal law.[57]  Scott is not entitled to relief under his first

ground.

Ground 2:  Failure to Provide a Copy of Transcripts

Scott contends that the Superior Court denied him transcripts he contended were

necessary for him to properly and adequately prepare his motions for a mistrial and a new trial.

Scott argues that this prevented him from presenting a defense.  The Superior Court rejected

Scott's argument holding:

> [Scott] claims ineffective assistance of counsel in failing to file mistrial and
> new trial motions.  [Scott] does admit that his own new trial motion was considered
> by the court.  [Scott] then changes his argument, to that of error in not providing him
> with transcripts to support his new trial motion.  [Scott], however, admits that the
> court found [Scott's] claims to be without foundation, and does not now show
> otherwise.[58]

Scott relies on authorities for the proposition that, as an indigent person, he is entitled to a

free transcript on appeal under the Fourteenth Amendment.  Scott cites no authority for the

proposition that a defendant has a constitutional right to a free transcript during trial or to prepare

a motion for a new trial or mistrial, and independent research by this Court did not uncover any

---

[56](...continued)
evidence to show propensity to commit a charged crime."); *Davis v. Grigas,* 443 F.3d 1155, 1158
(9th Cir. 2006) (noting that where the Supreme Court has not established clear law, a state
court's decision cannot be contrary to or an unreasonable application of it under AEDPA); *see
also Alberni v. McDaniel,* 458 F.3d 860, 863, 867 (9th Cir. 2006) (habeas petitioner's argument
that use of propensity evidence violated his right to due process fails to meet the AEDPA
threshold).

[57] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also
Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[58] Docket No. 8 at 159.

such authority.  What authority exists is to the contrary.[59]  In the absence of Supreme Court authority on the issue, this Court cannot say that the Superior Court unreasonably applied clearly established federal law as determined by the Supreme Court.[60]

Just as importantly, despite the fact that he had access to the transcripts in preparation of his state habeas petition as well as his Petition to this Court, Scott does not make any showing of prejudice as a result of the failure to provide him with a copy of the transcript in connection with his motions for a new trial and a mistrial.  That is, Scott does not indicate what additional facts he might have presented in his motions or how those additional facts might have changed the outcome.  Scott is not entitled to relief under his second ground.

Ground 4:  Prosecutorial Misconduct/Overreaching

Scott alleges a veritable smorgasbord of supposed acts of the prosecutor in this case that he contends constituted misconduct.  The details are sufficiently recited in the Superior Court's decision and are not repeated here.  The Superior Court rejected Scott's arguments, holding:

> [Scott] next claims prosecutorial misconduct in introducing gruesome photos, making unnecessary references to bloody victims, mischaracterizing the evidence regarding the victim's injuries, making unnecessary presentation of bloody pictures to the victims, and making over-dramatized closing and rebuttal arguments to inflame the passions of the jurors.

---

[59] *See United States v. Bari*, 750 F.2d 1169, 1181-82 (2d Cir. 1984) (daily transcripts required to be furnished to an indigent defendant under 18 U.S.C. § 3006A *if ordered by the prosecution*); *Walle v. Sigler*, 456 F.2d 1153, 1156 (8th Cir. 1972) (declining to extend the requirement of transcripts on appeal to daily transcripts); *cf Gardner v. California*, 393 U.S. 367, 372 (1969) (Harlan, J., dissenting) ("[A] transcript of a prior hearing may be an incidental convenience—so to would a daily transcript at a criminal trial—but the Fourteenth Amendment does not require a state to furnish an indigent with every luxury that a wealthy litigant might conceivably choose to purchase" (citing *Draper v. Washington*, 372 U.S. 487, 496 (1963))).

[60] *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

The claim is barred by <u>Robbins/Clark</u>.  Nor is appellate counsel shown to be ineffective in failing to raise the claim on appeal, as none of [Scott's] claims of misconduct is meritorious.  [Scott] does not show that any of the prosecutor's actions were misconduct; rather, the matters he cites do not appear to be beyond the realm of permissible questioning, argument, or admission of evidence.  The prosecutor was entitled to establish evidence of injuries with eyewitness testimony of seeing blood, and its prejudicial value does not appear to have outweighed its probative value.  The prosecutor did not go beyond the boundaries of closing argument is summarizing the prosecutor's view of the evidence.  The prosecutor *did* not err in discussing the meaning of being armed.  [Scott] does not state how the prosecutor misinterpreted reasonable doubt, or what the prosecutor argued that was beyond the realm of reasonable doubt.  The prosecutor did not mislead or coerce Li's testimony regarding the money that was missing, nor did the prosecutor commit misconduct in arguing the money issue to the jury.  The prosecutor was entitled to argue about the prior conviction, which was an element of the charged Penal Code § 12021(a) offense.  Other examples cited by [Scott] are not specific enough to determine, with [Scott] merely stating a conclusion and citing a page in reporter's transcript; none of the cited pages appear to contain any misconduct or misconduct that was prejudicial.  Indeed, none of the examples cited by [Scott] were so prejudicial as to warrant reversal, even if they did amount to misconduct.  As such, the claim is not subject to an exception to the <u>Robbins/Clark</u> bar, and fails on the merits in any event (<u>Bower</u>).[61]

A prosecutor may "prosecute with earnestness and vigor—indeed, he should do so."[62] "To warrant habeas relief, prosecutorial misconduct must 'so infect the trial with unfairness as to make the resulting conviction a denial of due process.'"[63]  In essence, what is required is that reviewing courts consider the equivalent to evaluating whether there was a "reasonable probability" of a different result.[64]

This Court has reviewed Scott's allegations and determined that the decision of the Superior Court was not "contrary to, or involve[ ] an unreasonable application of, clearly

---

[61] Docket No. 8 at 157-58.

[62] *Berger v. United States*, 295 U.S. 78, 88 (1935).

[63] *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

[64] *See Hein v. Sullivan*, 601 F.3d 897, 914-15 (9th Cir. 2010).

21

established Federal law, as determined by the Supreme Court of the United States" at the time the

state court rendered its decision nor "based on an unreasonable determination of the facts in light

of the evidence presented in the State court proceeding."[65]  Scott is not entitled to relief under his

fourth ground.

Ground 5: Insufficiency of the Evidence (Robbery Counts)

Scott contends that the evidence is insufficient to support his conviction of robbing two

of the victims because the property belonged solely to the other two victims.  The California

Court of Appeal disagreed, holding:

> Defendants argue they cannot be convicted of robbing Huyen and Truc because the stolen credits cards and money only belonged to Canh and Nhan.
>
> In determining the sufficiency of the evidence, we ask "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'  [Citation.]"  (*People v. Hatch* (2000) 22 Cal.4th 260, 272, italics omitted.)  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)
>
> "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  (§ 211.)  California follows "the traditional approach that limits victims of robbery to those persons in either actual or constructive possession of the property taken."  (*People v. Nguyen* (2000) 24 Cal.4th 756, 764.)  "'Robbery is an offense against the person; thus a store employee may be the victim of a robbery even though he is not its owner and not at the moment in immediate control of the stolen property.'  [Citation.]"  (*People v. Miller* (1977) 18 Cal.3d 873, 880.)  Business employees "have sufficient representative capacity to their employer so as to be in possession of property stolen from the business owner."  (*People v. Jones* (2000) 82 Cal.App.4th 485, 491.)  Likewise, a family member acts in a representative capacity over property belonging to other family members.
>
> In *People v. Gordon* (1982) 136 Cal.App.3d 519 (*Gordon*), the defendants entered a residence by ruse, threatened a couple with a firearm, and took drugs and money belonging to the couple's absent adult son.  (*Id.* at pp. 523-524.)  The appellate court noted neither parent physically possessed the items taken nor knew

---

[65] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

about the marijuana or money, and the only evidence to support a finding of possession was the couple's ownership and residence in the home where the crime occurred. (*Id.* at p. 529.) The court upheld the jury's determination the parents were robbery victims who possessed their son's items for purposes of the robbery statute. (*Ibid.*)  The court noted various individuals have been designated as victims in a robbery such as a purchasing agent in charge of payroll, store clerks, barmaids, janitors in sole occupation of premises, watchmen, and gas station attendants. (*Ibid.*) "Clearly, if those individuals . . . were responsible for the protection and preservation of the property entrusted to them, parents have at least the same responsibility to protect goods belonging to their son who resides with them in their home." (*Ibid.*)

There was ample evidence for the jury to find that Huyen and Truc had a responsibility to protect the money and credit cards of their parents and grandparents. Defendants stole the family's rent money.  Indeed, all four victims were forced to the ground next to each other and serially threatened by Heng in an effort to locate the family's valuables.  Huyen was pistol-whipped and led to believe he would be shot if he did not tell Heng where the money was located.  He was then forced to watch his elderly parents being beaten in another unsuccessful attempt to get him to reveal the location of the money.  In a last attempt to get the family's money, Truc was threatened with rape, with the timely arrival of the police foreclosing an even greater tragedy.  Taking the entire incident into account, all four victims were equally threatened and equally brutalized, and the stolen money was intended for the family's general welfare.

All the foregoing separates Huyen and Truc from the Good Samaritan or casual business visitor found not to constructively possess the stolen property.  (See, e.g., *Sykes v. Superior Court* (1994) 30 Cal.App.4th 479, 480-481 [security guard employed at different store not in constructive possession of property]; *People v. Nguyen, supra,* 24 Cal.4th at p. 764 [visitor at business not in constructive possession of property taken from business and its employees].)  Although the victims in *Gordon* were parents rather than children, Huyen and Truc are adults, fully capable of protecting the property of the elderly Canh and Nhan.  Moreover, defendants made no distinction between the four victims in their impositions on each as they sought the location of the money and other valuables. Having been personally and directly victimized by three robbers, the defendants, and holding a critical interest and shared responsibility in keeping the family's rent money, Truc and Huyen were in constructive possession of the stolen $1,500.[66]

As articulated by the Supreme Court in *Jackson*, the constitutional standard for

sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to

---

[66] *People v. Heng* [*Scott*], No. C054315, 2008 WL 2721718, at *2-4 (Cal. Ct. App. Jul. 14, 2008).

the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt."[67]  This Court must, therefore, determine whether the California

court unreasonably applied *Jackson*.  In making this determination, this Court must bear in mind

that it is a fundamental precept of dual federalism that the States possess primary authority for

defining and enforcing the criminal law.[68]  Consequently, although the sufficiency of the

evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its

inquiry by reference to the elements of the crime as set forth in state law.[69]  A fundamental

principle of our federal system is "that a state court's interpretation of state law, including one

announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas

corpus."[70]  A determination of state law by a state intermediate appellate court is also binding in a

federal habeas action.[71]  This is especially true where the highest court in the state has denied

review of the lower court's decision.[72]  "[A]bsent a specific constitutional violation, federal

habeas corpus review of trial error is limited to whether the error 'so infected the trial with

---

[67] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[68] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[69] *Jackson*, 443 U.S. at 324 n.16.

[70] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. Am. Tel. & Tel. Co.,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[71] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[72] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

unfairness as to make the resulting conviction a denial of due process.'"[73]  "Federal courts hold

no supervisory authority over state judicial proceedings and may intervene only to correct wrongs

of constitutional dimension."[74]  It is through this lens that this court must view an insufficiency of

the evidence claim.

In this case, the California Court of Appeal held that the evidence satisfied the elements

of robbery as defined by California law.  Scott's reliance on *Georgia v. Randolph*[75] is misplaced

and misconstrues its holding.  *Randolph* held that one occupant could not give law enforcement

effective consent to search shared premises as against a co-tenant who is present and states a

refusal to permit a search.[76]  This has no bearing on whether or not there was constructive

possession sufficient to satisfy the California statute—entirely a question of state law not within

the purview of this Court in a federal habeas proceeding.[77]  Scott is not entitled to relief under his

fifth ground.

---

[73] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[74] *Smith v. Philips*, 455 U.S. 209, 221 (1982) (citations omitted); *see also Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) ("It is beyond dispute that we do not hold a supervisory power over the courts of the several states." (quoting *Dickerson v. United States*, 530 U.S. 428, 438 (2000))); *Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

[75] 547 U.S. 103 (2006).

[76] *Id.* at 108-09.

[77] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) ("The short of the matter is that the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business.").

Ground 6:  Application of Penal Code §§ 654/664

Scott was sentenced to consecutive sentences for each of the four robbery counts and the

use of a firearm enhancement.  Scott contends that this violated the Equal Protection and Due

Process Clauses.  Properly construed, however, Scott's argument is not a constitutional equal

protection or due process claim; instead, his claim is that the trial court misapplied California

Penal Code §§ 654 and 664.  The Superior Court rejected Scott's arguments, holding:

> [Scott] next claims that Counts 2, 3, and 4 should have been stayed under
> Penal Code § 654.  [Scott], however, ignores the fact that the robbery counts, which
> charged violent crimes, all involved separate victims, an exception to Penal Code
> § 654 (People v. Miller (1977) 18 Cal.3d 873, 885; People v. Robinson (1988) 198
> Cal. App. 3d 674).  The claim therefore is barred under Robbins/Clark and fails
> under Bower in any event.[78]

The proper interpretation and application of the California Penal Code is purely and

simply a question of state law beyond the purview of this Court in a federal habeas proceeding.[79]

Having failed to present a question of constitutional dimension, Scott is not entitled to relief

under his sixth ground.[80]

Ground 7:  Ineffective Assistance of Trial Counsel

As with his fourth ground (prosecutorial misconduct) Scott alleges a veritable

smorgasbord of supposed errors and omissions of his trial counsel that he contends constituted

ineffective assistance of counsel.  The details of Scott's specific claims are recited in the Superior

---

[78] Docket No. 8 at 160.

[79] *Cooke*, 131 S. Ct. at 863.

[80] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) ("It is beyond dispute that we do
not hold a supervisory power over the courts of the several states." (quoting *Dickerson v. United
States*, 530 U.S. 428, 438 (2000))).

Court's decision and are not repeated here.  The Superior Court rejected all of Scott's claims,

holding:

> [Scott] next claims that trial counsel rendered ineffective assistance of counsel.
>
> [Scott] does so in mostly conclusionary terms and fails to state with particularity the facts upon which he is relying to justify relief (In re Swain (1949) 34 Cal.2d 300).  Other allegations simply lack a showing that the counsel's decision was not a reasonable tactical choice, or that any error was prejudicial (Strickland).
>
> [Scott] also claims that his trial counsel denied him the right to self-representation.   [Scott], however, could not have been granted self-representation status by his trial counsel; rather, only the court could grant that status upon proper motion.
>
> [Scott] claims that his counsel did not show up for his self-representation and Marsden (People v. Marsden (1970) 2 Cal.3d 118) hearings.  [Scott], however, does not show that he was prejudiced or that his counsel had no excuse for not being present.  Nor does [Scott] state any, grounds for finding anything erroneous in the hearings that were held on the matter.
>
> [Scott] complains that counsel's motions for severance and to exclude statements were lacking, but fails to show with sufficient specificity what could have been argued that was reasonably likely to have had a different outcome.  [Scott] also takes issue with the truth of certain evidence that he thought should have been excluded, claiming it was really otherwise; however, that is not proof that it actually was otherwise, nor does it constitute ineffective assistance of counsel.  He also claims that some of his statements should not have been suppressed and that his counsel was ineffective in not opening the door to their use; [Scott], however, does not show that that was not a reasonable tactical choice.
>
> [Scott] also gives examples of conflicting testimony.  This does not constitute a cognizable claim.  It also simply appears to be a rambling on by [Scott], nitpicking at conflicts in testimony that the jury could have sorted out in determining the facts.  Yet, further on in the petition, [Scott] connects this back to somehow being relevant to his self-representation/Marsden hearings. The connection is indeterminable.
>
> [Scott] then lists items that he felt counsel should have done at trial.  He does not, however, attach any reasonably available documentary evidence, such as affidavits from witnesses, to show what could have been introduced at trial that would have been reasonably likely to make a difference in the outcome.
>
> [Scott] also claims ineffective failing to object with regard to his other claims in the petition.  As they had no merit, this claim has no merit.
>
> [Scott] claims ineffective assistance of counsel in failing to arrange for a photo lineup.  [Scott], however, does not show prejudice, as [Scott] was identified by all the victims, including in field identifications, and conflicting trial evidence appears to have been rejected by the jurors.  An additional photo lineup would not have made a difference in the outcome, especially if such a lineup would have

27

resulted in more positive identifications of [Scott]; thus, it does not appear that counsel made an unreasonable tactical choice in not requesting a lineup.  Nor does it appear that the court would have granted yet another lineup, beyond the identifications that already had been made.

[Scott] claims ineffective assistance of counsel in failing to file mistrial arid new trial motions.  [Scott] does admit that his own new trial motion was considered by the court.  [Scott] then changes his argument, to that of error in not providing him with transcripts to support his new trial motion.  [Scott], however, admits that the court found [Scott's] claims to be without foundation, and does not now show otherwise.

[Scott] claims ineffective assistance of second counsel appointed to investigate and prepare a new trial motion based on ineffective assistance of counsel, in not preparing himself to argue.  [Scott] admits, however, that second counsel testified that he found nothing meritorious in [Scott's] arguments. [Scott] nevertheless claims that second counsel did not receive or review transcripts. [Scott], however, fails to now state what should have been argued that would have been reasonably likely to have made a difference in the outcome.

[Scott] claims ineffective assistance of counsel with regard to the Penal Code § 12021(a) charge.  However, he fails to understand that being an ex-felon is an element of that offense and that the prosecution was required to prove his ex-felon status to the jury.

[Scott] claims ineffective assistance of counsel with regard to aggravating factors in sentencing.  [Scott], however, fails to show that any aggravating factor relied on by the court in sentencing was erroneous.

[Scott] claims ineffective assistance of counsel in failing to challenge the amount of damages incurred by the victims.   [Scott] however, fails to show that the amount was incorrect.[81]

Under *Strickland*, to demonstrate ineffective assistance of counsel, Scott must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[82]  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment."[83]  Scott must show that defense counsel's representation was not within the range of competence demanded of attorneys

---

[81] Docket No. 8 at 158-60.

[82] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[83] *Id*.

in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[84]   An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[85]   An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either one of the *Strickland* prongs.[86]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933.   And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.   See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.   The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[87]

---

[84] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[85] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." (citing *Strickland*, 466 U.S. at 687)); *United States v. Cronic*, 466 U.S. 648, 656 (1984) ("The right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.   Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." (citations omitted)).

[86] *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

[87] *Knowles v. Mirzayance*, 556. U.S. 111, 123 (2009).

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[88]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard.  Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,] [which] is different from an *incorrect* application of federal law."[89]

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[90]

While judicial inquiry into counsel's performance under *Strickland* must be highly deferential, it is "by no means insurmountable," but nonetheless remains "highly demanding."[91] "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney."[92] "Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair

---

[88] *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[89] *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

[90] *Id.* at 786.

[91] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[92] *Richter*, 131 S. Ct. at 791 (internal quotation marks and citation omitted).

trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial."[93]

Scott bears the burden of proving that counsel's trial strategy was deficient.  "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[94]  "[He] bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy."[95]  "In determining whether the defendant received effective assistance of counsel, 'we will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but rather, will defer to counsel's sound trial strategy."[96]  "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."[97]

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[98]  The court must then consider those acts or omissions against "prevailing professional norms."[99]  Even then, "counsel is strongly presumed to have rendered adequate

---

[93] *Morrison*, 477 U.S. at 382.

[94] *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

[95] *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).

[96] *Id.* (quoting *Strickland*, 466 U.S. at 689).

[97] *Strickland*, 466 U.S. at 681.

[98] *Id*. at 690.

[99] *Id*.

assistance and made all significant decisions in the exercise of reasonable professional judgment."[100]

Scott has not met this heavy burden.  He has shown no evidence indicating that counsel was unreasonable or ineffective for selecting his chosen trial strategy.  He presented no alternate attorney's determination challenging counsel's decisions or actions.  He has not quoted any "[p]revailing norms of practice as reflected in American Bar Association standards and the like" indicating that counsel acted outside these norms.[101]

This Court cannot say that the decision of the Superior Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[102]  Nor, viewing the matter through the doubly-deferential lens of *Mirzayance-Richter*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of Scott's case within the scope of *Andrade-Williams-Landrigan-Richter*; i.e., the state court decision was not more than incorrect or erroneous, its application of clearly established federal law was not objectively unreasonable. Scott has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that Scott's defense was prejudiced, as required by *Strickland-Hill*.  Scott is not entitled to relief under his seventh ground.

---

[100] *Id*.

[101] *Id.* at 688.

[102] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

Ground 8:  Trial Court Abridgement of Constitutional Rights

Scott alleges a broad array of what he contends constituted errors on the part of the trial court in violation of his rights under the Fifth, Sixth, and Eighth Amendments.  These claims include allowing the prosecutor to refer to Scott's prior conviction, failure to correct alleged prosecutorial misrepresentations and other instances of misconduct, and improperly ruling on objections.  As did the Superior Court, this Court notes that these claimed errors relate to matters raised in other claims.  The Superior Court rejected Scott's arguments, holding:

> [Scott] next claims court error with regard to matters raised in or related to [Scott's] other claims in the petition.  The claims are barred by Robbins/Clark, and [Scott] does not show that appellate counsel made an unreasonable tactical choice not to present any of these claims on the appeal.
> Regardless, [Scott] fails to show any error, and instead rambles on, nitpicking at a plethora of events that do not constitute any viable claim.[103]

This Court has reviewed in depth the allegations made by Scott and determined that the decision of the Superior Court that Scott did not present any viable claim was not "contrary to, or involve[ ] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision nor "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[104]  Scott is not entitled to relief under his eighth ground.

---

[103] Docket No. 8 at 160.

[104] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

Ground 9:  Imposition of Restitution

Scott contends that the trial court's failure to hold a hearing to establish the amount of

restitution violated his rights under the Fourth, Fifth, Seventh, and Fourteenth Amendments.  The

Superior Court denied this claim, holding:

> [Scott] next claims that $19,000 in victim restitution was erroneously ordered
> because there was no hearing to establish the actual loss.  [Scott], however, ignores
> that the victim restitution was ordered at his sentencing hearing, which was his
> opportunity to object to the amount and present evidence otherwise.  Nor does he
> now show that $19,000 was an incorrect amount.  The claim therefore is barred under
> Robbins/Clark and fails under Bower in any event.[105]

First, Scott's reliance on the Seventh Amendment right to a jury trial in suits at common

law has never been held applicable to the states.  The balance of Scott's arguments so-called

equal protection and due process arguments, as properly construed, are that the sentencing court

did not follow state law in setting the amount of restitution, matters beyond the purview of this

Court in a federal habeas proceeding.[106]  Having failed to present a question of constitutional

dimension, Scott is not entitled to relief under his ninth ground.[107]

Ground 10:  Ineffective Assistance of Appellate Counsel

Scott contends that because his appellate counsel did not raise all of the claims Scott

presented to counsel and requested be raised, he was denied the effective assistance of appellate

counsel.  The Superior Court rejected Scott's argument, holding:

> [Scott] does complain that his appellate attorney declined to raise every single
> issue that could be raised on appeal, and instead chose only the best ones.  This could
> be deemed as a claim of ineffective assistance of counsel on appeal in not raising this

---

[105] Docket No. 8 at 161.

[106] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam).

[107] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006).

claim, so as to constitute an exception to the <u>Robbins/Clark</u> bar.  However, [Scott] fails to show ineffective assistance because the appellate attorney properly found that any such claim would not have prevailed (see <u>Strickland v. Washington </u>(1984) 466 U.S. 668).  This is so with regard to all of [Scott's] claims in the petition.[108]

The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[109]  This Court cannot say that the decision of the Superior Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[110] Nor, viewing the matter through the doubly-deferential lens of *Mirzayance-Richter*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of Scott's case within the scope of *Andrade-Williams-Landrigan-Richter*; i.e., the state court decision was not more than incorrect or erroneous, its application of clearly established federal law was not objectively unreasonable.  Scott has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that Scott's defense was prejudiced, as required by *Strickland-Hill*.  Scott is not entitled to relief under his tenth ground.

---

[108] Docket No. 8 at 157.

[109] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir. 1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

[110] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

<u>Ground 11: Failure to sever trial from co-defendants</u>

The trial court denied Scott's motion to sever his trial from those of his co-defendants.

Scott contends that this violated his rights under the Fifth and Fourteenth Amendments.  The

Superior Court rejected Scott's arguments, holding:

> Petitioner next claims that the court erred in denying his severance motion. Petitioner, however, fails to show that the denial was erroneous.  That he and his codefendants may have had antagonistic defenses was not sufficient to warrant severance (<u>see People v. Boyde</u> (1988) 46 Cal.3d 212, 232, <u>affirmed, Boyde v. California</u> (1990) 494 U.S. 370; <u>People v. Turner</u> (1984) 37 Ca1.3d 302, 312-313). Rather, this was a classic case for a joint trial.  The claim therefore is barred under <u>Robbins/Clark</u> and fails under <u>Bower</u> in any event.[111]

Under California law, the denial of a motion to sever trials of co-defendants otherwise

properly joined is within the discretion of the trial judge, overturned only if the defendant carries

the burden of clearly showing potential prejudice.[112]  Federal law is the same.[113]  Although the

Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional

violation,[114] the Supreme Court has never held that abuse of discretion is an appropriate basis for

granting federal habeas relief.  Indeed, quite to the contrary, the Supreme Court has suggested

that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas

---

[111] Docket No. 8 at 160.

[112] *Frank v. Superior Court*, 770 P.2d 1119, 1120 (Cal. 1989).

[113] *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993); *United States v. Martinez*, 657 F.3d 811, 819-20 (9th Cir. 2011).

[114] *See Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc).

proceeding it is not.[115]  Having failed to present a question of constitutional dimension, Scott is

not entitled to relief under his eleventh ground.[116]

## V.  CONCLUSION AND ORDER

Scott is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[117]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[118]

The Clerk of the Court is to enter judgment accordingly.

Dated: March 1, 2012.

        /s/ James K. Singleton, Jr.
        JAMES K. SINGLETON, JR.
        United States District Judge

---

[115] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." (citing § 2254(d)(1))).

[116] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006).

[117] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705-06 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude  the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[118] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.